MARY A. BULLOCK *vs.* BUTLER EXCHANGE COMPANY.

PROVIDENCE—MARCH 28, 1902.

PRESENT : Stiness, C. J., Tillinghast and Rogers, JJ.

(1) *Negligence. Elevators. Evidence.*

Where a thing is shown to be under the management of the defendant or his servants, and the accident is such as in the ordinary course of things

does not happen if those who have the management use proper care, it affords, in the absence of explanation by defendant, reasonable evidence that the accident arose from want of care.

(2) *Negligence.  Elevators.*

A declaration charging negligence in the improper management of an elevator did not contain any charge of a violation of Gen. Laws cap. 108, § 16, providing that passenger elevators shall be fitted with some mechanical device to prevent the car from being started until the door opening into the shaft is closed.  The court charged that if the jury found that the statute was not complied with, and that that was the conducing cause of the accident, that of itself would perhaps be sufficient negligence, and that it was for them to determine its weight :—

*Held,* that it appeared from the evidence that if the statute had been complied with the accident could not have happened.  That the manner in which the accident happened was clearly set out in the declaration, and though the statute was not referred to in terms, yet the thing alleged as the cause of the accident was that which a compliance with the statute would have prevented, and there was no error in the charge.

Trespass on the Case for negligence.    Heard on petition of defendant for new trial, and petition denied.

Rogers, J.    This is an action of trespass on the case for injury alleged to have been caused by the negligence of the defendant's servant in operating a passenger elevator in the defendant's building in Providence while transporting the plaintiff from the first to the fifth floor.    After a verdict for the plaintiff for $1,000, upon a jury trial, the defendant petitioned for a new trial upon the following grounds, viz.:

*First.*    That the verdict is against the law and the evidence, and the weight thereof.

*Second.*    That the presiding justice erred in his charge to the jury, and especially in that portion thereof referring to the statutory requirements regarding elevators, and to which the defendant duly excepted.

*Third.*    That the plaintiff, by her evidence, has entirely failed to support the acts of negligence complained of in her declaration.

Upon demurrer to both counts of the declaration this Division sustained the demurrer to the first and overruled the demurrer to the second count, upon which latter count alone, therefore, the jury trial was had,

This count is substantially described in the opinion sustaining it, on the trial of the demurrer (22 R. I. 105, 107), in this wise, viz.:

"It sets out in substance that after the elevator had reached the fifth floor, and while the plaintiff was passing out of the elevator onto said floor (she having been invited to leave the elevator by the servant by opening the door after arriving at this floor), the defendant's servant caused the elevator to move upwards, whereby one of the plaintiff's feet was caught between the floor of the elevator and the fifth floor of the building and injured. This count, as we understand it, alleges that the elevator had reached the fifth floor or was so near to the level thereof that the passengers could easily and safely step out upon said floor; that the elevator had either absolutely or practically come to a standstill; that the door had been opened to enable the passengers to alight; and that while the plaintiff was stepping out, the elevator was started up again and the plaintiff's foot caught as aforesaid."

The plea was the general issue. The jury took a view and as the defendant offered no testimony the evidence was uncontradicted.

Inasmuch as the plaintiff and the boy who operated the elevator for the defendant, who at the time of the accident had only been in the defendant's employ for three or four days, but who is still in its employ and might have been called by the defendant to testify at the jury trial, were the only occupants of the elevator on the trip when the accident occurred, and the latter was not called on to testify, the plaintiff was the sole witness of the accident whose statement we have, the other witnesses in the case being two assistants in the establishment she was on her way to, who heard her cries of pain and ran out and found her where she fell just outside the elevator, and some others who testified as to the nature of her injuries.

The testimony shows that the plaintiff, a woman of seventy years of age, was on her way to the rooms of Doctor Moore in the Butler Exchange, in Providence, for treatment; that

she got into the elevator on the first floor of that building to be transported to the fifth floor; that upon reaching that floor, or, rather, very near the level of it, the elevator stopped and the elevator boy opened the door so she could get out. The plaintiff describes the accident in this wise: "Q. 55. I want you to tell us whether the elevator stopped? A. Oh yes, it stopped, I didn't attempt to get out until I saw it was stopped and then I attempted to get out. Q. 56. Now then, was there a door to the elevator? A. The door the boy opened. I couldn't get out unless he opened the door. Q. 57. You hadn't told us that before. You say the boy opened the door? A. Yes, and as I stepped out my foot caught—I mean as I went to step out I couldn't move it, and I said 'You have my foot caught.' Q. 58. Did you feel that your foot was caught—as your foot was caught did you feel any motion of the elevator? A. I felt something kind of rubbing my foot—the flesh there—I didn't know that was what I felt. Q. 59. What noise did you make? A. I screamed like everything, it hurt me awfully. I though I was killed but I wasn't. . . . Q. 174. When you started to walk out of that elevator can you tell the jury whether that elevator moved while you were in the act of walking out? Can you tell them whether it did or not? A. I think it moved. Q. 175. What makes you think so? A. Because of the dragging sensation to my foot, I kind of hesitated thinking it would relieve the pressure, you know. . . . *Cross-Examination.* . . . Q. 206. When was it you got your foot caught, by getting into the elevator? A. When I was getting out. Q. 207. You say you asked him to move the elevator? A. Yes sir, I think he would say that himself. Q. 208. Were you standing up at the time? A. Yes sir, I was standing, but when he lowered it down I went, I couldn't stand on one foot. Q. 209. When he lowered the elevator then you fell out on the floor? A. I don't know as I fell out, because it wasn't open then. Q. 210. It wasn't open then? A. No. The Court. What wasn't open? Q. 211. You mean the elevator door wasn't open? A. I couldn't fall out unless it was open, could I? Q. 212. Did you fall out or

down in the elevator ?   A. I fell down in the elevator because just as soon as I thought he lifted it up, down I went all of a sudden—let my foot out.   Q. 213. When you went down all of a sudden was it in the elevator or out on the floor ?   A. I don't know how it could be out on the floor.   Q. 214. The elevator door was shut, was it ?   A. I didn't attempt to get out until it was open.   As soon as he opened the door I attempted to get out.   Q. 215. Where did you fall, on the elevator floor or on the floor of the hall of the building ?   A. I think it must have been inside I fell.   Q. 216. The door wasn't open then when you fell—the elevator door wasn't open was it ?   A. I couldn't tell how I fell, but my foot was crushed so I couldn't tell what was going on around me. Q. 217. You couldn't tell us whether the door was open or shut ?   A. I know it was open.   You know I stood waiting for him to let it down.   As soon as he opened the door—as soon as I didn't see any motion I attempted to get out—as soon as he opened the door.   Q. 218. You were standing there and asked him to drop the elevator down ?   A. You know I went to step and my foot was caught and I couldn't get out.   Q. 219. You asked him to let the elevator down ? A. Yes sir, he will remember that.   Q. 220. When he let the elevator down then you fell ?   A. Yes sir, my foot went right down.   Q. 221. You couldn't tell us whether you fell inside or outside ?   A. No sir, anybody wouldn't be apt to remember if they were so crushed you know."

The witnesses Poliquin and Gadbois, on hearing the plaintiff's screams, immediately ran from Dr. Moore's office and found her stretched out on the fifth floor just outside the elevator, with her shoe badly torn and the heel thereof pulled off.   On examining her foot they found it was very badly bruised, and there was some blood on it and on her stocking. The top of the foot was very much bruised and the heel was getting black and so was the leg.   No bones were broken. The witness Poliquin swore that when he next saw her, a fortnight later, the whole of the back of her leg was black, the top of the foot was very sore, a big crust had formed on

the top of the foot, and that she had to walk on crutches and use a push chair.

There is the most positive and direct proof of the disastrous result of the plaintiff's attempt to step from the elevator on to the fifth floor of the building, and we know from the natural law of cause and effect that to produce such an effect there must have been some adequate cause. The plaintiff's evidence is confused and not clear as to exactly how the accident happened, due doubtless in part to her failure to accurately observe some of the details of the occurrence, and also in part to the suddenness of the pain and suffering to which she was subjected, and which still more confused her perceptive power. Unfortunately we have not the benefit of the testimony of the elevator boy, the only other person on the spot when the injury took place.

The construction of the elevator with its surroundings satisfies the mind how the accident must have occurred, by supplying an adequate and easily comprehensible cause for the effect produced. The fifth floor of the Butler Exchange where the elevator passes by or through it, instead of being cut away just enough for the elevator to clear it, is cut away several inches, and then to prevent one's stepping into the space thus left when the elevator is upon the same level as the floor, a thin plate of iron is set into and attached to the edge of the floor and projects out to within a fraction of an inch of the elevator, being also supported underneath at each end of the elevator gateway by brackets, so that when the floor of the elevator is up flush with the level of the top of the floor of the building with its iron edge no one's foot could possibly get caught in stepping out of the elevator. But if the elevator was stopped and the door opened before the floor of the elevator and the floor of the building were on a level, a space would be left, and if the elevator was down a couple of inches, or perhaps less, one in the elevator near the doorway could easily in putting his foot out, in the very first step, thrust it through the space between the floor of the elevator and the bottom side of the projecting iron plate. A very

slight upward motion of the elevator would then tightly squeeze the foot. If the elevator was going at any appreciable speed, it would have cut the foot off, for the edge of the iron plate would have been the equivalent of a dull knife. If a person's foot became so caught he would be held as in a vise, and the way to extricate him would be by lowering the elevator. Had the door been closed the accident could not have happened. Neither could it have occurred had the door not been opened until the elevator floor had been brought level with the top of the floor of the fifth story. It likewise could not have happened if the statute had been complied with, for Gen. Laws R. I. cap. 108, § 16, provides that : "every passenger elevator shall be fitted with some mechanical device to prevent the elevator car from being started until the door or doors opening into the elevator shaft are closed," under a penalty provided for in an amendment to the said section.

(1) This makes the manner of the accident comparatively clear and intelligible, and harmonizes and explains the plaintiff's testimony ; or, at least, it affords reasonable evidence of negligence by the defendant, and, as said in the Exchequer Chamber, in *Scott* v. *London Dock Co.*, 3 H. & C. 596, 601, "where the thing is shown to be under the management of the defendant or his servants, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendants, that the accident arose from want of care."

We see no indication of contributory negligence on the plaintiff's part, for her evidence shows that the elevator had stopped and she supposed it was not moving. The only reason she thinks it was moving is from feeling the dragging motion on her foot, but the sense of feeling can inform the mind as effectually as the sense of seeing, and if she was standing close by the door ready to get out, she would be directly above the opening so that the space would not be very perceptible to the eye, especially to an old lady seventy years of age, and when her foot was released she fell so near to the

edge of the elevator and the edge of the floor that she began. her fall in the elevator and ended it on the fifth floor of the building.

The jury heard the testimony and had the benefit of a view to aid in understanding it, and we see no reason to disturb it on the ground of the verdict's being against the evidence.

(2)    We do not find any errors in the judge's charge that will entitle the defendant to a new trial. The evidence shows, we think, that the defendant's elevator was not fitted with some mechanical device to prevent the elevator car from being started until the doors opening into the elevator shaft were closed. The declaration, as we have seen, did not specifically allege as a conducing cause of the defendant's negligence that the defendant's elevator was not so fitted. The justice presiding at the jury trial charged the jury as follows :

"I charge you gentlemen, that the plaintiff had a right to assume that the provisions of the law have been complied with and that that car could not start up or down so long as the doors remain open. If you find that the statute was not complied with, and that that was the conducing cause of this accident, that of itself would be some negligence, sufficient negligence, perhaps, and it is for you to determine the weight which you will attach to that and all parts of the evidence." We find no error in this. In *Willy* v. *Mulledy,* 78 N. Y. 315, in which the plaintiff as administrator sued his landlord for the death of his wife by fire in a house that was not provided with a fire escape when the statute provided that one should be provided, Earl, J., in delivering the opinion of the court referring to the plaintiff and his wife, said,—"He had the right to assume that the statutory duty had been performed. . . . They had the right to rely upon its presence there as required by statute."

The defendant's counsel in his brief contends that the portion of the charge relating to a violation of the statute, was entirely unwarranted, and tended to direct the attention of the jury to a matter not in issue ; that there was no charge

of a violation of the statute in the declaration, that there was no testimony upon that point, and that there was no testimony whatever tending to show that the opening or closing of the door had anything to do with the accident.

As we have before said, we think that the construction of the elevator and the evidence in the case as to the manner in which the accident happened, afford reasonable evidence, in the absence of explanation by the defendant, that the elevator was started upward after stopping near the fifth floor, and that such starting up was the cause of the accident; that such starting was not at the plaintiff's request; that, after such starting up and the injury had been done, the elevator was lowered at plaintiff's request, by which lowering the plaintiff's foot was released, and that if the statute had been complied with the foot could not have been caught. The manner in which the accident happened is clearly set forth in the second count and though the statute is not referred to by chapter and section, yet the very thing is alleged as the cause of the accident that a compliance with the statute would have prevented. The statute was referred to by the justice presiding at the jury trial in a very careful and guarded manner, and we fail to find any error in the charge referring to it.

The presiding justice granted the defendant's requests to charge, so the defendant was not injured thereby, though the second request was too favorable to the defendant and the jury in arriving at their verdict disregarded it. That request reads: "If the elevator was raised or lowered at the plaintiff's request after it came to a standstill, such raising or lowering was not negligence." It should have been modified when given to the jury so as to read: "If the elevator was raised or lowered at the plaintiff's request after it came to a standstill, *so that such raising or lowering conduced to the accident,* such raising or lowering was not negligence *on the part of the defendant.*" That, however, gave the defendant no cause to complain.

We fail to find cause for a new trial and therefore the petition is denied and the case is remitted to the Common Pleas

Division with direction to enter judgment upon the verdict with costs for the plaintiff.

*E. C. Pierce*, for plaintiff.

*Walter B. Vincent*, for defendant.